UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VINCENT DEGEORGE,<br>Plaintiff,<br>v.<br>MICHAEL MINDORO, M.D., et al.,<br>Defendants. | Case No. 17-CV-06069-LHK<br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br>Re: Dkt. No. 28 |

Plaintiff, a California prisoner proceeding *pro se*, is incarcerated at Correctional Training Facility ("CTF"). Plaintiff filed a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Complaint").

In the Complaint, plaintiff alleged that the following defendants were deliberately indifferent to plaintiff's serious medical needs: Doctors Michael Mindoro ("Dr. Mindoro") and Grewen Palomero ("Dr. Palomero"), both former CTF physicians; Doctor Ashley Mulligan-Pfile ("Dr. Mulligan-Pfile"), then a physician at CTF; Darrin Bright, then Chief Physician and Surgeon at CTF ("Chief Physician Bright"); and S. Posson, then Chief Medical Executive at CTF ("Chief Medical Executive Posson") (collectively, "defendants").

1

Case No. 17-CV-06069-LHK
ORDER GRANTING DEFS.' MOT. FOR SUMM. J.

Defendants filed a motion for summary judgment ("Motion"). Plaintiff filed an opposition ("Opposition"), and defendants filed a reply. For the reasons stated below, defendants' Motion is **GRANTED**.

I. BACKGROUND

The following facts are viewed in the light most favorable to plaintiff. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999) (stating that, at summary judgment, courts must view the evidence in the light most favorable to the nonmoving party). Unless otherwise indicated, the facts are undisputed.

Plaintiff's claim for deliberate indifference appears to be predicated on two sets of facts: the denial of morphine by Dr. Mindoro, Dr. Palomero, and Chief Physician Bright; and the denial of plaintiff's administrative grievances by Dr. Mulligan-Pfile, Chief Medical Executive Posson, and Chief Physician Bright. Because these facts occurred separately, the Court will discuss them separately.

A. Plaintiff's Condition and Treatment

Plaintiff has been diagnosed with lower back pain. *See* Dkt. No. 1 ("Complaint") ¶ 12 (noting the diagnosis and describing the pain as "severe"), Dkt. No. 28 ("Motion") at 1 (noting the diagnosis and describing the pain as "chronic"). Plaintiff has had lower back pain since undergoing back surgery in 1998. Mot. at 3. Beginning in November 2013, plaintiff's lower back pain was treated with morphine. Compl. ¶ 16; Mot. at 3.

Plaintiff stated that morphine "was very effective" in treating his lower back pain. Compl. ¶ 16. In August 2016, while plaintiff was being treated with morphine, a nurse noted plaintiff "walked with a steady gait and [had] no complaint of pain." Mot. at 3; *see also* Dkt. No. 28-2 ("Palomero Decl.") at Ex. A.

In October 2016, a prison officer ("Officer Liberatore") stated that " [plaintiff] walks just fine" and that plaintiff's "job requires sitting for long periods of time, lifting, bending, etc." Compl. ¶ 27. However, in that same month, while still being treated with morphine, plaintiff described his pain as being "7 out of 10" in an appointment with Dr. Mindoro. *Id.* ¶ 21; Mot. at 4.

2

Based on plaintiff's self-reporting, Dr. Mindoro concluded "that the morphine was no longer effective and that it was time to wean [plaintiff] off of opioid medication in favor of other options." Dkt. No. 28-4 ("Mindoro Decl.") ¶ 26.

In December 2016 CTF's Pain Management Committee "reviewed and discussed" plaintiff's pain relief treatment. Compl. ¶ 23. At the Pain Management Committee meeting, Dr. Mindoro, Dr. Palomero, and Chief Physician Bright decided to discontinue plaintiff's treatment with morphine. *Id.* ¶ 26; Mot. at 5. In the summary judgment briefing, the parties provided alternative explanations for this decision.

Plaintiff alleged that Dr. Mindoro, Dr. Palomero, and Chief Physician Bright relied on Officer Liberatore's observation of plaintiff's walking and job performance, and that the doctors concluded from this description that "plaintiff's pain wasn't 'severe' enough to affect plaintiff's activities of daily life." Compl. ¶ 29; *see also* Dkt. No. 33-1 ("Opposition Declaration") at 6, 11 (listing as a disputed fact whether the pain management committee's decision was "influenced by the treatment interference alleged [sic] testimony of officer").

Defendants did not dispute that they relied on Officer Liberatore's observations, *see* Mot. at 5 (noting the decision was based in part on plaintiff's ability "to carry on with his activities of daily living), but they provided additional context for the decision to wean plaintiff off morphine:

> [A]t that time the medical community was becoming increasingly aware of the problems of opioid use. Recent studies showed that long term opioid treatment does not provide medical benefits for chronic back pain such as Mr. DeGeorge reported. In March 2016, the U.S. Department of Health and Human Services, Centers for Disease Control and Prevention produced guidelines for prescribing opioids for chronic pain, showing limited utility for opioid use in most chronic non-cancer pain. Opioid treatment is not recommended for patients who, like Mr. DeGeorge, have a history of drug abuse, because of the high risk of abuse and the danger of death from overdose. Addiction to opioid medications results in the need for stronger and stronger doses to alleviate the pain, and also affects patients' respiration. As a result, CDCR began to follow the Centers for Disease Control guidelines and to discontinue use of opioids for chronic pain, instead reserving opioid prescription only for cancer patients and for those in acute pain for short periods of time.

Mot. at 4-5; Palomero Decl. ¶ 18.

3

Case No. 17-CV-06069-LHK
ORDER GRANTING DEFS.' MOT. FOR SUMM. J.

With regard to plaintiff specifically, defendants stated the decision was based on plaintiff's "functioning at a baseline level . . . with the accommodations he was already given," and his ability "to carry on with his activities of daily living," *id.* at 5; the fact that plaintiff "had failed to show significant improvement in pain and function before and during his morphine regimen," *id.*; and plaintiff's reported history of drug abuse, specifically "cocaine, meth or speed, heroin and weed" to physicians at CTF, *id.* at 3; Palomero Decl. at Ex. A. With respect to the latter concern, Dr. Mindoro explained that plaintiff "regularly requested renewal of his prescription for morphine with increasing urgency despite the expiration date not yet having been reached. Such activity can be indicia of addiction." Mindoro Decl. ¶ 6.

At the Pain Management Committee meeting, Dr. Mindoro, Dr. Palomero, and Chief Physician Bright decided that plaintiff "would probably benefit from less reliance on his current opioid pain medication and more on physical therapy with less dangerous medication." Mindoro Decl. ¶ 6; *see also* Palomero Decl. at ¶¶ 14-15. Dr. Mindoro explained that this determination, as well as his prescription of a non-narcotic drug to treat plaintiff's pain, were exercises of "medical judgment." Mindoro Decl. ¶¶ 27-28.

Plaintiff alleged that after the Pain Committee meeting, his treatment with morphine was "gradually reduc[ed]" and "replac[ed] . . . with other ineffective or inept medications." *Id.* ¶ 30. However, Dr. Mindoro noted that plaintiff refused to take the new, non-narcotic pain medication that had been prescribed. Mot. at 5; *see also* Mindoro Decl. ¶ 29. In fact, plaintiff "refused to take any alternative pain medications and refused both his blood pressure medication and his cholesterol medication." Mindoro Decl. ¶ 30.

On January 10, 2017, during the process of gradually reducing plaintiff's morphine prescription, plaintiff had a follow-up medical evaluation with Dr. Mindoro. Compl. ¶¶ 32-35. Plaintiff informed Dr. Mindoro that the "morphine prescription was the only effective pain medication," and that following the reduction in plaintiff's morphine prescription the "pain in plaintiff's back was piercing, aching, throbbing, and was going down the back of plaintiff's right leg to his ankle." *Id.* ¶ 33-34. Plaintiff alleged that "instead of continuing to alleviate plaintiff's

4

suffering with known effective pain medication," Dr. Mindoro "continued the prescribing of known ineffective . . . alternative medications." *Id.* ¶ 35. In addition to prescribing alternative pain medication that plaintiff refused to take, the prison medical staff obtained accommodations for plaintiff's pain including "a housing restriction to the ground floor, limited stairs, lower bunk only." Mindoro Decl. ¶ 23.

Plaintiff had another follow-up appointment with Dr. Mindoro in March or May 2017. *Id.* ¶ 47 (stating the appointment occurred in March); Mindoro Decl. ¶ 30 (stating the appointment occurred in May). In that appointment, plaintiff informed Dr. Mindoro that "plaintiff's pain had increased, especially with 'walking or standing for prolonged periods of time.'" Compl. ¶ 48. Plaintiff also informed Dr. Mindoro that "the only thing that works for me is morphine." *Id.* ¶ 50. Plaintiff alleged that Dr. Mindoro "ignored the effective pain medication treatment" and "agree[d] with the prior committee recommendation that [plaintiff] is a poor candidate for use of long-term narcotic medications." *Id.* ¶¶ 51-52. Dr. Mindoro represented that he ordered x-rays of plaintiff's lumbar spine to investigate the pain radiating to plaintiff's legs. Mindoro Decl. ¶ 30.

### B.   California's Framework for Administrative Appeals

The California Department of Corrections and Rehabilitation ("CDCR") allows inmates and parolees to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a). Inmates may also file administrative appeals alleging misconduct by correctional officers. *See id.* Under the regulations, as amended effective January 28, 2011, there are three levels: first level appeal, second level appeal, and third level appeal. Cal. Code Regs. tit. 15, § 3084.7.

"Administrative exhaustion within California requires the completion of the third level of administrative review." *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017). Inmates must name any "issue, information, or person . . . in the originally submitted CDCR Form 602." Cal. Code Regs. tit. 15, § 3084.1. California regulations also require the appeal to name "all staff member(s) involved" and "describe their involvement in the issue." Cal. Code Regs. tit. 15, § 3084.2(a)(3).

### C. Plaintiff's Administrative Grievances

#### 1. Grievance Against Dr. Mindoro

On January 15, 2017, while plaintiff's morphine treatment was being tapered off, plaintiff filed an administrative grievance regarding the tapering off of plaintiff's morphine prescription ("Mindoro Grievance"). Compl. ¶ 36. Specifically, plaintiff argued that "Dr. Mindoro's action to discontinue my medication . . . constitutes deliberate indifference to my serious medical needs." *See* Dkt. No. 28-1 ("Gower Decl.") at Ex. A.

Dr. Mulligan-Pfile denied the Mindoro Grievance at the first level of review. *See id.* Dr. Mulligan-Pfile noted that "the current pain management community standard . . . advises against the use of narcotic medication for non-cancer pain," and observed that plaintiff had been "advised of the current pain management community standard." *Id.* Dr. Mulligan-Pfile concluded "there is no indication to restart narcotic medication at this time." *Id.* Plaintiff argued that in reaching this conclusion, Dr. Mulligan-Pfile "simply ignored plaintiff's overall situation." Compl. ¶ 37.

At the second level of review, plaintiff's Mindoro Grievance was denied by Chief Medical Executive Posson. *Id.* ¶ 53. Plaintiff alleged that Chief Medical Executive Posson "just simply adopted" Dr. Mulligan-Pfile's conclusions. *Id.* ¶ 54. However, in his decision, Chief Medical Executive Posson stated that:

> Careful review of your medical chart reveals that you have been evaluated for your painful condition in a timely manner without evidence of departure from standard clinical practice. Your condition has been discussed with the pain management committee, and it has been the opinion of your providers that [morphine] is not necessary at this time given a risk-benefit analysis of your current condition. While you may not agree with the medical decisions of your treatment team, it does not constitute staff misconduct or deliberate indifference to your medical needs.

Gower Decl. at Ex. A.

Plaintiff subsequently appealed to the third level of review. *See id.* At that level, the reviewer noted, "You are recorded as having declined adjunct pain medication . . . and there is no documentation to indicate your condition meets criteria for chronic narcotics, such as morphine, at this time." *Id.* The Mindoro Grievance was denied at the third level of review. *See id.*

6
Case No. 17-CV-06069-LHK
ORDER GRANTING DEFS.' MOT. FOR SUMM. J.

### 2. Grievance Against Dr. Palomero

On February 12, 2017, plaintiff submitted a grievance against Dr. Palomero ("Palomero Grievance"). In the Palomero Grievance, plaintiff claimed that Dr. Palomero "has deliberately omitted and falsified medical information in an effort to stop [morphine] from being prescribed." *See* Gower Decl. at Ex. A.

The Palomero Grievance bypassed the first level of review, and was denied by Chief Physician Bright at the second level. *See id.* Chief Physician Bright concluded that Dr. Palomero "did not violate of CDCR policy." *See id.*

Plaintiff subsequently appealed to the third level of review, at which the Palomero Grievance was denied on June 30, 2017. *See id.*

## II. DISCUSSION

Plaintiff contended that defendants "violated [his] federal constitutional rights to be free from the unnecessary infliction of pain." Compl. ¶ 1. This claim for deliberate indifference appears to be predicated on two sets of facts: the denial of morphine by Dr. Mindoro, Dr. Palomero, and Chief Physician Bright; and the denial of plaintiff's administrative grievances by Dr. Mulligan-Pfile, Chief Medical Executive Posson, and Chief Physician Bright.

To the extent plaintiff's claim is based on the denial of morphine, defendants moved for summary judgment on the basis that a difference of opinion regarding appropriate medical care does not amount to deliberate indifference. To the extent plaintiff's claim is based on the denial of administrative grievances, defendants moved for summary judgment on the basis that plaintiff cannot predicate a claim for a constitutional violation on conduct in reviewing plaintiff's grievances, because there is no constitutional right to file administrative appeals. The Court will address both arguments in turn.

### A. Legal Standard

#### 1. Summary Judgment Standard

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as a

7

Case No. 17-CV-06069-LHK
ORDER GRANTING DEFS.' MOT. FOR SUMM. J.

matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*

The court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial [,] . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Id.* The burden then shifts to the nonmoving party to "go beyond the pleadings, and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *See id.* at 324 (internal quotations omitted).

For purposes of summary judgment, the court must view the evidence in the light most favorable to the nonmoving party; if the evidence produced by the moving party conflicts with evidence produced by the nonmoving party, the court must assume the truth of the evidence submitted by the nonmoving party. *See Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

### 2. Deliberate indifference to serious medical needs

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on other*

8

Case No. 17-CV-06069-LHK
ORDER GRANTING DEFS.' MOT. FOR SUMM. J.

*grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* (citing *Estelle*, 429 U.S. at 104). A prison official is deliberately indifferent if he knows a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but "must also draw the inference." *Id.* Consequently, in order for deliberate indifference to be established, there must exist both a purposeful act or failure to act on the part of the defendant and harm resulting therefrom. *See McGuckin*, 974 F.2d at 1060.

A claim of medical malpractice or negligence is insufficient to make out a violation of the Eighth Amendment. *Id.* at 1059. Nor does a difference of opinion between a prisoner-patient and prison medical authorities regarding proper treatment amount to deliberate indifference. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981).

**B.     Analysis**

Defendants did not dispute that plaintiff's lower back pain is a serious medical need. Mot. at 10. Thus, the only question before this court is whether there is a genuine issue of material fact as to whether defendants exhibited deliberate indifference in treating plaintiff's pain.

The Court will first address defendants' argument that a difference of opinion does not amount to deliberate indifference, and will then address defendants' argument that plaintiff cannot predicate a claim for a constitutional violation on conduct in reviewing plaintiff's grievances.

**1.     Claim Based on Pain Management**

Plaintiff alleged that "defendants Palomero, Bright, and Mindoro deliberately acted to ignore their factual knowledge that plaintiff was at that time, receiving ongoing and effective pain management treatment"; that these defendants "discontinue[d] the plaintiff's known effective pain management and relief medication" and "continued to prescribe[] other inept replacement

medications" despite being told that these medications were ineffective; and that this violated plaintiff's "right[] to be free from the unnecessary infliction of pain." Compl. ¶¶ 1, 26.

Although plaintiff now describes morphine as "very effective" in treating his lower back pain, *id.* ¶ 16, the record reveals that plaintiff still had pain while taking morphine. In October 2016, before plaintiff's morphine prescription was reduced, plaintiff informed Dr. Mindoro that plaintiff's pain was a "7 out of 10," *id.* ¶ 21, which caused Dr. Mindoro to conclude that the morphine was no longer effective, *see* Mindoro Decl. ¶ 26. At the same time, CDCR had adopted a new policy discouraging prescription of opioids such as morphine for chronic pain, in accordance with guidelines released by the United States Department of Health and Human Services. Mot. at 4-5. Those same guidelines cautioned against prescribing opioids to patients who, like plaintiff, have a history of drug abuse. *Id.*; *see also* Palomero Decl. at Ex. A (identifying plaintiff's history of drug abuse). Defendants explained that Dr. Mindoro, Dr. Palomero, and Chief Physician Bright decided to discontinue plaintiff's morphine treatment as an exercise of medical judgment, in light of current medical guidelines, plaintiff's history of substance abuse, his ability to carry on with daily activities, and his failure to show improvement when treated with morphine. Mindoro Decl. ¶ 6; *see also* Palomero Decl. at ¶¶ 14-15.

A difference of opinion between a prisoner-patient and prison medical authorities regarding proper treatment does not amount to deliberate indifference. *Franklin v. Oregon*, 662 F.2d 1337, 1344 (9th Cir. 1981). Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is insufficient, as a matter of law, to establish deliberate indifference. *See Toguchi v. Chung*, 391 F.3d 1051, 1059-60 (9th Cir. 2004). In order to prevail on a claim involving choices between alternative courses of treatment, a plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to the plaintiff's health. *Id.* at 1058.

Defendants provided compelling evidence justifying their decision to prescribe plaintiff a pain medication other than morphine. <u>First</u>, defendants explained that such a change in treatment

10

Case No. 17-CV-06069-LHK
ORDER GRANTING DEFS.' MOT. FOR SUMM. J.

is supported by recent medical studies showing, and by growing awareness by the medical community of, the dangers posed by opioids. Indeed, multiple courts, including this one, have recognized the dangers of opioid abuse. *See Hadden v. Adams*, No. 16-CV-02686 LHK (PR), 2018 WL 6438362, at *1 (N.D. Cal. Dec. 7, 2018) ("Narcotic pain medications may be useful but may also sometimes be ineffective. . . . Prescribing opiods carries risks, however, such as addiction, abuse, and other adverse side effects."); *see also United States v. Garrison*, 888 F.3d 1057, 1059 (9th Cir. 2018) ("There is now an epic crisis of deadly opioid abuse and overuse. . . . the Acting Secretary of Health and Human Services declared the national opioid abuse epidemic a public health emergency."). Second, plaintiff's growing resistance to morphine, *see* Compl. ¶ 21 (stating plaintiff's pain was at a 7 out of 10 while he was taking morphine), also supports defendants' treatment decision. Third, plaintiff was able to carry on with the activities of his daily life, Mot. at 5, 11, Compl. ¶ 27, which suggests that continuing his morphine prescription presented an unjustifiable risk. Under these circumstances, defendants' decision to wean plaintiff off morphine does not appear to be medically unacceptable.

Moreover, the record shows that after discontinuing plaintiff's morphine prescription, defendants took other reasonable steps to abate plaintiff's pain. *See Farmer*, 511 U.S. at 837. Dr. Mindoro prescribed an alternate, non-narcotic pain medication, which plaintiff refused to take. Mindoro Decl. ¶ 29. Plaintiff was given housing accommodations for his pain. *Id.* ¶ 23. Dr. Mindoro, Dr. Palomero, and Chief Physician Bright also recommended plaintiff be given physical therapy to alleviate his pain. *Id.* ¶ 27. Because defendants attempted to treat plaintiff's pain, they cannot be said to have been "indifferent" to it.

Although plaintiff disagreed with the doctors' treatment decisions, merely disagreeing does not show a triable issue in support of plaintiff's claim that Dr. Mindoro, Dr. Palomero, and Chief Physician Bright were deliberately indifferent. Plaintiff was required to, but did not, produce evidence that would allow a reasonable jury to conclude that these doctors' treatment decisions were medically unacceptable under the circumstances and chosen in conscious disregard of an excessive risk to plaintiff's health. *See Toguchi*, 391 F.3d at 1058.

11

Defendants' production of evidence justifying the decision to wean plaintiff off morphine shifted the burden to plaintiff to "come forth with evidence from which a jury could reasonably render a verdict in" his favor. *Oracle Corp. Sec. Litig.*, 627 F.3d at 387. Plaintiff did not present any evidence that defendants' decision was medically unacceptable, and thus failed to carry plaintiff's burden at summary judgment. *See Farmer*, 511 U.S. at 837. Because plaintiff produced no evidence undercutting the reasonableness of defendants' actions, there is no triable issue of fact as to whether defendants were deliberately indifferent in their treatment of plaintiff's pain.

Accordingly, to the extent plaintiff's claim is based on the decision to wean him off morphine, Dr. Mindoro, Dr. Palomero, and Chief Physician Bright are entitled to summary judgment.

### 2. Claim Based on Grievance Denials

Plaintiff alleged that Dr. Mulligan-Pfile, Chief Medical Executive Posson, and Chief Physician Bright improperly denied his administrative grievances. Plaintiff's claim fails to the extent it is based on these denials.

After Dr. Mindoro decided to wean plaintiff off morphine, plaintiff filed an administrative grievance arguing this decision "constitute[d] deliberate indifference to [plaintiff's] serious medical needs. *See* Mindoro Grievance. Dr. Mulligan-Pfile denied the Mindoro Grievance at the first level of review, noting that Dr. Mindoro's decision was in accordance with current pain management community standards. *See* Gower Decl. Ex. A. Chief Medical Executive Posson denied the Mindoro Grievance at the second level of review, agreeing that "[morphine] is not necessary at this time given a risk-benefit analysis of [plaintiff's] current condition." *Id.* Plaintiff alleged that these denials were improper. Compl. ¶¶ 41, 54.

Plaintiff also filed a grievance accusing Dr. Palomero of "omit[ing] and falsif[ying] medical information in an effort to stop [morphine] from being prescribed." Palomero Grievance. The Palomero Grievance was denied at the second level of review by Chief Physician Bright. *Id.* Plaintiff did not expressly accuse Chief Physician Bright of wrongful conduct in denying the

12

Case No. 17-CV-06069-LHK
ORDER GRANTING DEFS.' MOT. FOR SUMM. J.

Palomero Grievance. *See id.* ¶¶ 42-46. However, because plaintiff attempted to state a claim against Dr. Mulligan-Pfile and Chief Medical Executive Posson for essentially the same conduct, *see generally, id.*, and because the claim fails in any case, the Court assumes plaintiff intended to state the same claim against Chief Physician Bright.

To the extent plaintiff's claim is predicated on the wrongful denial of a grievance it fails because there is no constitutional right to a prison administrative appeal or grievance system. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) ("because inmates lack a separate constitutional entitlement to a specific prison grievance procedure . . . Ramirez's claim [regarding an improper grievance denial] lacks the necessary constitutional foundation"); *see also Sunnergren v. Tootell*, No. C 12-0979 LHK (PR), 2014 WL 261530, at *7 (N.D. Cal. Jan. 22, 2014) (citing Ramirez, 334 F.3d at 860, and granting summary judgment); *see also Hillman v. Stottsberry*, No. C 11-1245 LHK PR, 2012 WL 2395655, at *3 (N.D. Cal. June 25, 2012) (same). Accordingly, Dr. Mulligan-Pfile, Chief Physician Bright, and Chief Medical Executive Posson are entitled to summary judgment.[1]

## CONCLUSION

Defendants' motion for summary judgment is GRANTED. The Clerk shall terminate all pending motions and close the file.

**IT IS SO ORDERED.**

DATED: 5/15/2019

LUCY H. KOH
UNITED STATES DISTRICT JUDGE

---

[1] It also appears that a claim predicated on grievance denial may be unexhausted. Plaintiff does not appear to have named the appeals examiners as wrongdoers in his upper-level grievances, nor did he file a grievance complaining of the appeals reviewers' actions. *See generally*, Gower Decl. & Ex. A. Claims of wrongdoing by appeals examiners must be exhausted. *See Cortinas v. Portillo*, 754 F. App'x 525, 527 (9th Cir. 2018) (holding some remedy was available because an improper cancellation could have been appealed); *Frost v. Hallock*, No. 17-CV-07229-LHK (PR), 2019 WL 1102379, at *10 (N.D. Cal. Mar. 8, 2019) (finding claim predicated on grievance denial was unexhausted). However, because defendants did not raise this issue, and because plaintiff's claim predicated on a grievance fails on the merits, the Court need not address this issue.